IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE WALL GUY, INC., JEFFREY FRYE, AND
JR CONTRACTORS,**

       **Plaintiffs/Counter-Defendants,**

v.                                                                          Case No. 3:20-cv-00304

**FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER
FOR THE FIRST STATE BANK,**

       **Defendant/Counter-Plaintiff,**

**RESPONSE OF FDIC-RECEIVER TO MOTION OF THE WALL GUY,
INC. JEFFREY FRYE AND JR CONTRACTORS TO ENFORCE
JUDGMENT AS RENDERED BY THE JURY RECORDED AS
JUDGMENT ORDER IN THE ALTERNATIVE, IF AND ONLY IF,
<u>SUMMARY JUDGMENT IS NOT GRANTED</u>**

The Federal Deposit Insurance Corporation ("FDIC"), in its capacity as Receiver for The First State Bank ("FDIC-Receiver"), responds to the motion of The Wall Guy, Inc.; Jeffrey Frye; and JR Contractors (collectively, "Borrowers") to enforce the judgment as rendered by the jury ("Motion to Enforce") as follows:

<u>**PRELIMINARY STATEMENT**</u>

Borrower's Motion to Enforce acknowledges that *Resolution Tr. Corp. v. Allen*, 16 F.3d 568, 573 (4th Cir. 1994) governs the current procedural posture of this litigation, but then asserts, incorrectly, that under *Allen* the Court should adopt the initial judgment for the jury's award rather than the final judgment in which the state court granted remittitur. *Allen*, however, requires this Court to adopt the *final* judgment and then entertain post-judgment motions, if any. *Allen* thus permits the Court to consider the FDIC-Receiver's pending Motion to Reconsider and Amend Judgment (Doc. 19) and would likewise permit the Court to determine a motion to reconsider filed

by Borrowers. But it does not allow the Court to simply adopt an earlier order vacated by the state court or grant the other extraneous and unsupported relief requested by Borrowers.

Because Borrower's Motion to Enforce asks the Court to restore the jury's award, albeit without citing any supporting law or making any arguments, it could be construed as a request to vacate the state court's final judgment and restore the jury's award. The FDIC-Receiver will therefore respond accordingly.

## RESPONSE

**A.  Because Borrowers presented no evidence of legally recoverable damages at trial, the court should have granted judgment to First State.**

The FDIC-Receiver has already addressed, in the Memorandum in Support of FDIC-Receiver to Reconsider and Amend Judgment (Doc. 20, "FDIC Supporting Memorandum"), the errors committed by the state court when it declined to grant judgment to The First State Bank ("First State") or order a new trial. To summarize, the testimony of Mr. Frye, Borrowers' only fact witness supporting its claims, suggested the following damages:

1. "Missing" loan funds: *$125,000* (Trial transcript, p. 164, lines 1-4)

2. Lost earnings: $43,000 annually (Trial transcript, p. 166, line 14, p. 176 lines 12-18)

3. Legal fees and costs, including payments made in Mr. Frye's failed bankruptcy: $105,000 (Trial transcript, p. 114, lines 21-22; p. 115, lines 4-9; p. 116, lines 10-12; p. 121, lines 20-23)

4. Collateral seized by or foreclosed on by the Bank: $873,477 (Trial transcript, p. 47, lines 10-23)[1]

---

[1] Mr. Frye did not directly testify to value, but testified about Plaintiffs' Exhibit 1, which was a list of assets and claimed values. The $873,477 figure was based, however, on an attachment to a proposed agreed order for relief from the automatic stay in Mr. Frye's bankruptcy, which Borrowers introduced as Plaintiffs' Exhibit 21. The FDIC-Receiver will discuss the latter exhibit in greater detail below.

Under settled West Virginia law, Borrowers could not recover, as damages against First State, unremitted loan advances (if any). *See Sparks v. Famers Fed. Sav. and Loan Ass'n*, 183 W.Va. 315, 317 (1990). Furthermore, the bank's documentation, submitted into evidence, substantially refuted Borrowers' claims of missing loan funds. *See* FDIC Supporting Memorandum, ftnt. 5. And the state court had already (correctly) ruled, before trial, that collateral estoppel barred claims purportedly arising from First State's repossession of property because the court had confirmed the bank's legal right to recover its collateral. Thus, Borrowers could not recover damages for the alleged value of the repossessed property or other losses, such as lost income, legal fees, or bankruptcy costs, arising from the bank's repossession efforts. Doc. 6-4, p. 103. The only evidence of damages offered at trial – consisting largely of Mr. Frye's unsupported testimony – related to these impermissible or precluded claims; the trial transcript confirms that Borrowers presented no evidence to support *any* legally recoverable damages.

Consequently, the transcript fully supports the state court's conclusion that the jury's $1.5 award was excessive because it included damages precluded as a matter of law. The court erred, however, by denying the bank's motion for judgment. That is, even if the bank breached a funding commitment (which Borrowers likewise failed to prove, notwithstanding the jury's verdict), Borrowers failed to present any evidence of legally recoverable damages arising from the alleged breach. The court should have granted judgment for the bank. Borrowers' implicit argument that the Court should instead vacate the final judgment in favor of a judgment affirming the jury's award is wholly without merit.

**B.      The FDIC-Receiver is entitled to a determination of the remaining indebtedness owed by Borrowers.**

### i.      The State Court did not issue a judgment on First State's deficiency claim.

Borrowers also urge the Court to adopt, and then discard, a purported $385,169.35 judgment for the FDIC-Receiver. The argument is based on several fallacies. Most notably, no such judgment exists. In its order issued on May 27, 2016, (the "May 2016 Order") the state court enjoined Borrowers from interfering with First State's repossession efforts after finding that (a) Borrowers had loans with an aggregate indebtedness to First State of $385,169.35, secured by certain collateral, (b) Borrowers lacked equity in the collateral and had defaulted, and (c) Borrowers had refused to assemble the collateral and peaceably allow First State to repossess despite the contractual duty to do so. Doc. 6-1, p. 42. But the court did not render a judgment on the bank's damages, as such an award would have been premature. A determination of the remaining indebtedness is still needed.

### ii.     Rule 13(a) of the West Virginia Rules of Civil Procedure does not require or authorize dismissal of the FDIC-Receiver's claim.

As grounds for setting aside the nonexistent judgment, Borrowers first argue that the "Judgment is based upon a case that was improperly brought in violation of Rule 13(a) of the Rules of Civil Procedure for West Virginia."[2] But Rule 13(a), like Federal Rule of Civil Procedure 13(a), merely requires a defendant to state as a counterclaim any claim that, at the time of service, the defendant has if the claim arises out of the transaction or occurrence that is the subject matter of

---

[2] Borrowers' argument that First State's complaint was improperly brought could reasonably be viewed as an impermissible collateral attack on the May 2016 Order issued in that action. It is also arguably barred by the state court's order, issued in 2018, denying Borrowers' request to set aside the May 2016 Order, Doc. 6-5, pp. 9-13, which is now law of the case. *See, generally, Arizona v. California*, 460 U.S. 605, 613 (1983) ("As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.")

the plaintiff's claim. Neither Federal nor West Virginia Rule 13(a) compels a court to dismiss a related claim that is instead brought under a separate complaint while the first complaint is pending. *See* C. Wright and A. Miller, 6 Federal Practice and Procedure § 1418 (3d ed. 2020). To the contrary, West Virginia law provides courts with broad discretion in applying Rule 13, particularly after the court consolidates related, pending matters. *See, e.g., Sorsby v. Turner*, 201 W.Va. 571, 578 (1997) ("[W]hen two or more civil actions have been consolidated, a claim which should have been asserted as a compulsory counterclaim in one or more of the answers in the actions consolidated but is, instead alleged in the complaint in another of the actions consolidated, should not be dismissed under *W. Va. R. Civ. 13(a)*, as the purposes of that rule are satisfied by consolidation of the actions." (Justice McHugh, concurring)).

Moreover, as explained in the Response of FDIC-Receiver to Motion of [Borrowers] for Summary Judgment (Doc. 18), First State's inchoate claim for a deficiency judgment would not constitute a compulsory counterclaim to Borrowers' claim for damages arising from the bank's alleged failure to fully fund the loans. First State's request for damages, held in abeyance while the bank attempted to recover and liquidate its collateral, was ancillary to its demand for compliance with security agreements in the face of Borrowers' ongoing efforts to evade collection. Because it concerned breaches that were occurring *after* Borrowers filed their complaint, the bank's complaint was outside the scope of Rule 13(a).

### iii. Borrowers misrepresent the evidence at trial.

Borrowers other arguments for avoidance of the FDIC-Receiver's loan deficiency claim are a hodgepodge of the same false and misleading claims that coaxed the jury into awarding a $1.5 million judgment. For example, Borrowers' Motion to Enforce asserts, three times, that the bank improperly seized collateral worth $873,477.00. Borrowers cite the same $873,477.00 figure

5

nine times in their untimely response (Doc. 24) to the Motion of the FDIC-Receiver to Reconsider and Amend Judgment. Similarly, during the trial – despite an order prohibiting the introduction of evidence relating to the purported wrongful foreclosure or repossession of collateral – Borrowers' counsel suggested, not less than *thirteen* times, that First State had seized $870,000 worth of collateral.[3] Misleading the jury, he claimed that the $870,000 figure was based on a bankruptcy court valuation. The following exchange between Borrowers' counsel and Mr. Frye is representative:

> Q: Now, they went with them saying you owe 385 and went and took all your stuff, right?
> A: They took everything. Took my home and everything.
> Q: And the bankruptcy court had valued that at over $870,000?
> A: According to that paper, yes.

> Trial Transcript, p. 162, lines 19 – 24; p. 163, line 1.

> Again, in closing arguments, Borrowers' counsel states:

> When you look at the bankruptcy form, it's over 870,000 that was determined in bankruptcy – bankruptcy court. It says "agreed order" on it. It sounds like multiple people agreed that's the amount. On top of that, though, even the bank admits he had over half a million in stuff.

> Trial Transcript, p. 631, lines 19 – 24:

But the bankruptcy court never determined the value of the bank's collateral. The agreed order to which Borrowers' counsel repeatedly referred is attached as Exhibit A. The document, a proposed order for relief from the automatic stay, does not address the value of the collateral. Instead, it concerned Mr. Frye's failure to maintain insurance on the bank's collateral. And it was never signed by the court, probably because the trustee had already filed a motion to dismiss the bankruptcy case due to Mr. Frye's repeated failures to comply with the bankruptcy court's orders. Borrowers introduced the attachment to the proposed stay relief order (Plaintiffs' Exh. 21) without

---

[3] Trial Transcript, p. 159, line 24; p. 160, line 4; p. 162, line 24; p. 167, line 19; p. 168, line 15; p. 169, line 21; p. 171, line 14; p. 494, lines 10, 18; p. 627, line 7; p. 628, line 21, p. 631, line 20; p. 646, line 6.

a copy of the order itself. But the attachment merely served to identify the collateral that Mr. Frye would be required to insure or surrender pursuant to his agreement with the bank.

Mr. Frye provided a somewhat more realistic estimate of the collateral's value, $217,400, in his Chapter 13 plan, filed under penalty of perjury on November 20, 2014. A copy of the plan is attached as Exhibit B. The state court's finding, in the May 2016 Order, that the collateral pledged by Borrowers was worth less than the $385,169.35 debt owed to First State, was probably based, at least in part, on Mr. Frye's sworn statement of value in the bankruptcy case. When First State finally recovered pledged equipment, they discovered extensive indicia of neglect and destruction, including trucks with missing engines and other serious damage. And some items remained (and still remain) successfully hidden by Mr. Frye.

Borrowers also argue:

The Judgment [for the $385,169.35 loan balance] was based upon evidence that was not supported by the Discovery that was only later supplied after the Plaintiffs' appeal period had expired. Further, the Discovery, when forcibly delivered upon order from the Court, was found to be missing in excess of $125,000.00 worth of funding.

Borrowers' Motion for Judgment, ¶ 3(a)(ii).

To reiterate, the state court did not issue a judgment on Borrowers' debt to First State. The May 2016 Order merely granted First State's request for an injunction, predicated, in part, on a finding that Borrowers outstanding debt was then $385,169.35. The court made no determination of the bank's damages, which could not be ascertained until the bank took possession of and liquidated the collateral. Unfortunately, for the reasons discussed above, that collateral proved to have far less value than anticipated.

The suggestion that the state court based its findings in the May 2016 Order on incomplete or incorrect information lacks merit. The documents introduced by First State at trial, for example, disprove Borrowers' claim that $125,000 in advances attributed to their loans were "missing." *See*

7

Doc. 20, ftnt. 5. When confronted at trial with the conflicting evidence, Mr. Frye responded evasively but did not deny the veracity of the bank's evidence. *See, e.g.*, Trial Transcript, p. 264, line 23 to p. 267, line 12. Viewed in its most favorable light, the $125,000 figure, which Borrowers continue to cite, proved to be nothing more than Mr. Frye's unsupported speculation.

**C.   Borrowers are not entitled to any relief relating to the Pledge Agreement between Borrowers and First State.**

Concluding the Motion to Enforce, Borrowers ask the Court to ensure the FDIC-Receiver's compliance with a pledge agreement executed by Borrowers and First State in December 2018 (the "Pledge Agreement"), after the jury trial but before the court granted remittitur. A copy of the Pledge Agreement is attached as Exhibit C. First State entered into the Pledge Agreement to address notices of judgment prematurely filed by Borrowers and to avoid the anticipated need for an appellate bond. In accordance with the agreement, First State granted several trust deeds.

The Motion to Enforce urges the Court, in the event of a breach of the Pledge Agreement, to issue sanctions, including an award of attorneys' fees, a "return" of property, including the property known as Booten Creek, and other injunctive relief.

The requests are devoid of factual or legal support. Borrowers identify no provision of the Pledge Agreement that First State or the FDIC-Receiver has allegedly breached. And, in any event, the Court could not grant the requested relief even if it were otherwise supported by the Pledge Agreement (which it is not) because (a) 12 U.S.C. § 1825(b)(2) provides that no property of the FDIC, when acting as receiver, shall be subject to levy, attachment, garnishment, foreclosure or sale without the FDIC's consent and (b) 12 U.S.C. § 1821(j) generally prohibits injunctive relief against the FDIC as receiver. In practical terms, § 1825(b)(2) signifies that, unless the FDIC consents to foreclosure, a claimant with an allowed, secured claim will receive payment in cash to the extent of its security. Here, because a final, non-appealable judgment has not been rendered,

8

Borrowers do not have an allowed claim. And for the reasons discussed above and in the FDIC Supporting Memorandum, Borrowers are not entitled to an allowed claim.

In any event, a close reading of the Pledge Agreement, and consideration of applicable law, reveals that Borrowers were required to release the trust deeds when they declined the remittitur. Specifically, Paragraph 5 of the agreement states:

> In the event the Bank's post-trial motions are granted by the Court and the verdict is vacated or a new trial is granted (or opted for by Frye in lieu of remittitur), Frye will immediately release the trust deeds [granted by the bank].[4]

As discussed in the FDIC Supporting Memorandum, the state court should have ordered a new trial when Borrowers declined remittitur. *See Manor Care, Inc. v. Douglas*, 237 W.Va. 57, Syl. pt. 10 (2014) ("When a court grants a remittitur, the plaintiff must be given the option of either accepting the reduction in the verdict or electing a new trial."); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998) (same). Thus, whether the Court grants judgment to the FDIC-Receiver or orders a new trial, Borrowers must release the trust deeds issued by First State.

## CONCLUSION

For the reasons stated above, the FDIC-Receiver respectfully requests that the Court deny, in its entirety, Borrowers' Motion to Enforce and, instead, grant judgment to the FDIC-Receiver on Borrowers' claims. Following dismissal of Borrowers' claims, the Court should proceed to trial for a determination of Borrowers' remaining indebtedness.

---

[4] Paragraph 6 of the Pledge Agreement also required Borrowers to enter into a new pledge agreement reflecting the reduced judgment amount if the court granted remittitur. Because the court was required by applicable law to grant a new trial after Borrowers declined remittitur, Paragraph 5, mandating Borrowers' release of the trust deeds, is the operative provision.

        Respectfully submitted,

        **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR THE FIRST STATE BANK**

        By:    /s/ *Christopher D. Smith*
                  One of Its Attorneys

**BAILEY & GLASSER LLP**
Benjamin L. Bailey (WVSB #200)
Christopher D. Smith (WVSB #13050)
209 Capitol Street
Charleston, WV 25301
(304) 345-6555 (Telephone)
(304) 342-1110 (Facsimile)
bbailey@baileyglasser.com
csmith@baileyglasser.com

**FEDERAL DEPOSIT INSURANCE CORPORATION LEGAL DIVISION**
B. Amon James, Senior Counsel
Nicholas Katsonis, Counsel
3501 Fairfax Drive, Room VS-D-7066
Arlington, Virginia 22226
(703) 562-2089
bajames@fdic.gov
nkatsonis@fdic.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of October 2020, I electronically filed the foregoing **Response of FDIC-Receiver to Motion of The Wall Guy, Inc. Jeffrey Frye and JR Contractors to Enforce Judgment as Rendered by the Jury Recorded as Judgment Order in the Alternative, if and Only if, Summary Judgment is Not Granted** using the Court's CM/ECF system, and/or via US Mail to be served upon the following:

Steven T. Cook, Esquire
Cook Law Offices, PLLC
P.O. Box 549
Barboursville, WV 25504
cooklaw31@gmail.com
*Counsel for The Wall Guy, Inc. Jeffrey Frye and JR Contractors, Plaintiffs*

Todd A. Biddle, Esquire
Ralph J. Hagy, Jr., Esquire
Bailes, Craig, Yon & Sellards, PLLC
The St. James Building
401 Tenth Street, Suite 500
Huntington, West Virginia 25701
tab@bcyon.com
rjh@bcyon.com
*Former Counsel for The First State Bank, Defendant*

/s/ *Christopher D. Smith*
Christopher D. Smith (WVSB #13050)